# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## CLEVELAND DIVISION

| | |
|---|---|
| IN RE: | CASE NO: 12-19038-aih |
| WILFRED CANNON | IN PROCEEDINGS UNDER CHAPTER 13 |
| Debtor | JUDGE: ARTHUR I. HARRIS |
| | MOTION OF DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ARGENT SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-W3 FOR RELIEF FROM STAY AND CO-DEBTOR STAY |
| | **(18408 Windward Road, Cleveland, OH 44119)** |

Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W3, (the "Movant") moves this Court, under Bankruptcy Code §§ 361, 362, 363, 1301 and other sections of Title 11 of the United States Code, and under Federal Rules of Bankruptcy Procedure 4001, and under Local Bankruptcy Rule 4001-1 for an order conditioning, modifying or dissolving the automatic stay imposed by Bankruptcy Code § 362 and 1301.

## MEMORANDUM IN SUPPORT

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157 (b)(2).  The venue of this case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2.      On December 23, 2005, the Debtor, Wilfred Cannon and Co-Debtor Charestine Cannon obtained a loan from Argent Mortgage Company, LLC in the amount of $135,000.00.

Such loan was evidenced by a Promissory Note dated December 23, 2005 (the "Note"), a copy of which is attached as Exhibit A.

      3.      To secure payment of the Note and performance of the other terms contained in it, the Debtor, Wilfred Cannon and Co-Debtor Charestine Cannon, executed a Security Agreement in favor of Argent Mortgage Company, LLC dated December 23, 2005 (the "Security Agreement"). The Security Agreement granted a lien on the real property, 18408 Windward Road, Cleveland, OH 44119 owned by Wilfred Cannon (the "Collateral"). The Collateral is more fully described in the Security Agreement (check one):

    ☒    attached as Exhibit B;

        OR

    ☐    contained in the Note, attached as Exhibit A.

      4.      The lien created by the Security Agreement was duly perfected by:

    ☒    Filing of the Security Agreement in the office of the Cuyahoga County Recorder on December 30, 2005.

    ☐    Filing of the UCC-1 Financing Statement in the office of _____ _____ on _____.

    ☐    Notation of the lien on the Certificate of Title.

    ☐    Other (state with particularity) _____.

A copy of the recorded Security Agreement, UCC-1 Financing Statement, Certificate of Title or other document, as applicable, is attached as Exhibit B. Based on the referral from the client and information related to the title to the real estate, the lien is the first and best lien on the Collateral.

5. The entity in possession of the original Note as of the date of this motion is Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W3, 1661 Worthington Road, Suite 100, P.O. Box 24737, West Palm Beach, Florida 33409.

6. The entity servicing the loan is: Ocwen Loan Servicing, LLC.

7. The note was transferred, as evidenced by the following:

    a. If the Collateral is real estate:

        i. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the original lender (check only one):

        ☐ N/A.

        OR

        ☐ By endorsement on the Note, payable to _____.

        OR

        ☒ By blank endorsement on the Note

        OR

        ☐ By allonge attached to the Note, payable to _____.

        OR

        ☐ By blank allonge, attached to the Note.

        OR

        ☐ The Note is not endorsed to the Movant, or is not endorsed in blank with an allegation that the Movant is in possession of the original Note. The factual and legal basis upon which the Movant is entitled to bring this motion is (explain with particularity and attach supporting documentation):

_____

OR

☐   By endorsement on the Note or by allonge attached to the Note, through a power of attorney. If this box is checked, a copy of the power of attorney is attached as Exhibit ____. Explain why it provides Movant the authority to endorse the Note:

_____

ii.   Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from _____ to _____

iii.   A court has already determined that Movant has the ability to enforce the Note with a judgment dated _____ in the _____. A copy of the judgment is attached at Exhibit ____

iv.   Other _____ [explain].

b.   If the Collateral is not real estate (check one):

☒   N/A

OR

☐   From the original lender to _____ by _____ _____

8.   The Security Agreement was transferred as follows (check one):

☐   N/A

OR

☒   From the original lender, mortgagee, or mortgagee's nominee on February 17, 2009 to Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W3. The transfer is evidenced by the document(s) attached to this Motion as Exhibit C.

9.      The value of the Collateral is $58,500.00.  This valuation is based on the fair market value as determined by the Cuyahoga County Auditor.

10.     As of September 19, 2018, there is currently due and owing on the Note the outstanding balance of $139,306.24, plus interest accruing thereon at a rate of 4.94% per annum [$16.03 per day] from March 1, 2015, as described in more detail on the worksheet.  The total provided in this paragraph cannot be relied upon as a payoff quotation.

11.     The amount due and owing on the Note as set forth in paragraph 10 does include a credit for the sum held in suspense account by the Movant.  The amount of the credit is $664.69.

12.     Other parties known to have an interest in the Collateral besides the Debtor, the Movant, and the trustee are (check all that apply):

☐     N/A

☒     The Cuyahoga County Treasurer, for real estate taxes.

☒     Co-Debtor, Charestine Cannon

☐     _____ in the amount of $_____

13.     The Movant is entitled to relief from the automatic stay under Bankruptcy Code § 362(d) for these reason(s) (check all that apply):

☐     Debtor has failed to provide adequate protection for the lien held by the Movant for these reasons: _____.

☐     Debtor has failed to keep the Collateral insured as required by the Security Agreement.

☐     Debtor has failed to keep current the real estate taxes owed on the Collateral.

☒     Debtor has failed to make periodic payments to Movant for the months of May 1, 2016 to September 1, 2018, which unpaid payments are in the aggregate amount of $25,448.34 (minus $664.69 in post-petition suspense) through September 19, 2018.  The total provided in this paragraph cannot be relied upon as a reinstatement quotation.

☐      Debtor is delinquent in funding the plan, and therefore the trustee has failed to make periodic payment to Movant since the commencement of the bankruptcy case for the months of _____ which unpaid payments are in the aggregate amount of $_____ through _____. The total provided in this paragraph cannot be relied upon as a post-petition reinstatement quotation.

☒      Debtor has no equity in the Collateral, because the Collateral is valued at $58,500.00, and including the Movant's lien, there are liens in an aggregate amount of greater than $139,306.24 on the Collateral.

☐      Debtor's plan provides for surrender of the Collateral.

☒      The property is not necessary to an effective reorganization because of missed payments and lack of equity.

☐      Other cause (set forth with specificity): _____

14.      Movant has completed the worksheet attached as Exhibit D.

WHEREFORE, Movant prays for an Order from the Court granting Movant relief from the automatic stay of Bankruptcy Code § 362 and 1301 to permit Movant to proceed under applicable non-bankruptcy law and for such other and further relief to which the Movant may be entitled.

Respectfully Submitted,

/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis (OH-0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (216) 373-3117
Fax: (847) 627-8805
Email: cmanolis@logs.com

**Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.**

# ADDENDUM

Case number: 12-19038-aih
Debtor: Wilfred Cannon

Basis for asserting that "Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W3" has the right to foreclose

Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for:
Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W3 (hereinafter, "noteholder") and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the Debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of the noteholder. The noteholder has the right to foreclose because (check the applicable below):
\_\_\_ Noteholder is the owner of the note.
\_X\_ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.
\_\_\_ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.
\_\_\_ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.
\_\_\_ Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that a copy of the foregoing was served, on the 27th day of September, 2018, to the following:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Lee R. Kravitz, on behalf of Wilfred Cannon, debtor(s), at leekravitz@sbcglobal.net

Lauren A Helbling, on behalf of the Chapter 13 Trustee's office at ch13trustee@ch13cleve.com, lhelbling13@ecf.epiqsystems.com

United States Trustee at Registered address @usdoj.gov

And by regular U.S. mail, postage prepaid, on:

Wilfred Cannon, 18408 Windward Road, Cleveland, OH 44119

Charlestine Cannon, 18408 Windward Road, Cleveland, OH 44119

Christopher Murray, 2079 East 9th St., Cleveland, OH 44115


/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis (OH-0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (216) 373-3117
Fax: (847) 627-8805
Email: cmanolis@logs.com


17-026592 BK06; pd; September 24, 2018

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO: 12-19038-aih** |
| **WILFRED CANNON** | **IN PROCEEDINGS UNDER CHAPTER 13** |
| **Debtor** | **JUDGE: ARTHUR I. HARRIS** |
| | **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ARGENT SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-W3'S RELIEF FROM STAY AND ABANDONMENT WORKSHEET** |

1.    LOAN DATA

    A.    IDENTIFICATION OF COLLATERAL (check all that apply):

        ☒ Real Estate 18408 Windward Road, Cleveland, OH 44119
            ☒ Principal Residence of Debtor
            ☐ Other
        ☐ Personal Property _____
        ☐ Debtor(s) Chapter 13 Plan provides for surrender of the Collateral.
        ☐ Other _____

    B.    CURRENT VALUE OF COLLATERAL: <u>$58,500.00</u>

    C.    SOURCE OF COLLATERAL VAULATION: <u>Cuyahoga County Auditor's Office</u>

    D.    ORIGINAL LENDER: <u>Argent Mortgage Company, LLC</u>

    E.    ENTITY ENTITLED TO ENFORCE THE NOTE: <u>Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W3</u>

    F.    CURRENT LOAN SERVICER: <u>Ocwen Loan Servicing, LLC</u>

    G.    DATE OF LOAN: <u>December 23, 2005</u>

    H.    ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE: <u>$135,000.00</u>

I.     ORIGINAL INTEREST RATE ON NOTE: <u>7.2%</u>

J.     CURRENT INTEREST RATE: <u>4.94%</u>

K.     ORIGINAL MONTHLY PAYMENT AMOUNT
(principal and interest only for mortgage loans): <u>$995.93</u>

L.     CURRENT MONTHLY PAYMENT AMOUNT: <u>$876.16</u>

M.     THE CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

☐ Includes an escrow amount of $_____ for real estate taxes.
☐ Includes an escrow amount of $_____ for property insurance.
☐ Includes an escrow amount of $_____ for _____
☒ Includes an escrow amount of $126.96.
☐ Does not include any escrow amount

N.     DATE LAST PAYMENT RECEIVED: <u>September 8, 2018</u>

O.     AMOUNT OF LAST PAYMENT RECEIVED: $<u>440.55</u>

P.     AMOUNT HELD IN SUSPENSE ACCOUNT: $<u>664.69</u>

Q.     NUMBER OF PAYMENTS PAST DUE: <u>29</u>

2.     AMOUNT ALLEGED TO BE DUE AS OF SEPTEMBER 19, 2018

|   | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Date Charges Incurred |
|---|---|---|---|---|
| A. | PRINCIPAL | $116,824.19 | | |
| B. | INTEREST | $20,487.62 | | |
| C. | TAXES | $3,211.22 | | |
| D. | INSURANCE | $0.00 | | |
| E. | LATE FEES | $370.03 | | |
| F. | NON-SUFFICIENT FUNDS FEES | $0.00 | | |
| G. | PAY BY PHONE FEES | $0.00 | | |
| H. | BROKER PRICE OPINIONS | $0.00 | | |
| I. | FORCE-PLACED INSURANCE | $0.00 | | |
| J. | PROPERTY INSPECTIONS | $0.00 | | |
| K. | OTHER CHARGES<br>Pre-Petition Credit<br>BK Suspense Credit<br>Post-Petition Credit | $0.00<br>($502.55)<br>($419.58)<br>($664.69) | | |

TOTAL OF DEBT AS OF DATE MOTION IS FILED:    $139,306.24
*This total cannot be relied upon as a payoff quotation

3.    AMOUNT OF ORIGINAL PRE-PETITION ARREARAGES $10,446.68

4.    AMOUNT OF ALLEGED POST-PETITION DEFAULT

|  | Description of Charge | Amount | Number | Date Incurred | Total |
|---|---|---|---|---|---|
| A. | PAYMENTS | $883.67 | 6 | 5/1/2016 - 10/1/2016 | $5,302.02 |
|  |  | $875.88 | 8 | 11/1/2016 - 6/1/2017 | $7,007.04 |
|  |  | $875.90 | 12 | 7/1/2017 - 6/1/2018 | $10,510.80 |
|  |  | $876.16 | 3 | 7/1/2018 - 9/1/2018 | $2,628.48 |
| B. | POST-PETITION PAYMENTS ADVANCED FOR TAXES (if not included in payment amount above) |  |  |  | $0.00 |
| C. | POST-PETITION PAYMENTS ADVANCED FOR INSURANCE (if not included in payment amount above) |  |  |  | $0.00 |
| D. | LATE FEES |  |  |  | $0.00 |
| E. | NON-SUFFICIENT FUNDS FEES |  |  |  | $0.00 |
| F. | PAY-BY-PHONE FEES |  |  |  | $0.00 |
| G. | BROKER PRICE OPINIONS |  |  |  | $0.00 |
| H. | FORCE-PLACED INSURANCE |  |  |  | $0.00 |
| I. | PROPERTY INSPECTIONS |  |  |  | $0.00 |
| J. | OTHER CHARGES (describe in detail and state the contractual basis for recovering the amount from the debtor) |  |  |  | $0.00 |

TOTAL ACCRUED:    $25,448.34

LESS SUSPENSE BALANCE:    ($664.69)

TOTAL POST-PETITION DEBT:    $24,783.65

5.    THE TRUSTEE LEDGER SHOWING POST-PETITION DISBURSEMENTS ON THIS
      DEBT OR A POST-PETITION PAYMENT SUMMARY SHOWING THE PAYMENTS
      MADE BY THE DEBTOR ON THIS DEBT IS ATTACHED TO THIS WORKSHEET
      AS EXHIBIT "1"

This Worksheet was prepared by:

/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis(0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone:  (513) 396-8100
Fax:  (847) 627-8805
Email:  cmanolis@logs.com


Loan No. ▮▮▮▮▮▮▮▮▮

# REDUCED PAYMENT FIXED RATE NOTE

December 23, 2005      Rolling Meadows      IL
[Date]      [City]      [State]

18408 WINDWARD ROAD, CLEVELAND, OH 44119
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 135,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.200 %.**

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on **February 1, 2006**.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **January 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

**I will make my monthly payments at: 505 City Parkway West, Suite 100, Orange, CA 92868**
or at a different place if required by the Note Holder.
**(B) Amount of Initial Monthly Payments/Change in Monthly Payments**
My initial monthly payments for the first 120 months of this Note will be in the amount of U.S. **$858.62** based on a fully amortizing 40 year repayment schedule.

On **February 1, 2016** the outstanding principal balance will be re-amortized so that the entire principal balance will be repaid on the Maturity Date. This will result in an increase in my monthly payment. Beginning on **February 1, 2016** my monthly payment will be U.S. **$995.93**. This monthly payment may change if I make any partial prepayment during the first 10 years of this Note as set forth in Section 4 of this Note. The Note Holder will notify me prior to the date of any change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time without a penalty.

If a partial prepayment is made the amount of my monthly payments will not decrease, however, if such partial prepayment is made following the 120th month of this Note, the principal and interest required under this Note will be repaid prior to the Maturity Date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials: *C C*
*W C*

12/23/2005 10:56:30 AM

200-1OH RED (Rev. 11/05)

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Charlestine Cannon_ (Seal)
Borrower:  CHARLESTINE CANNON
SSN: ████████

_Wilfred Cann_ (Seal)
Borrower:  WILFRED CANNON
SSN: ████████

_____ (Seal)
Borrower:
SSN:

PAY TO THE ORDER OF
WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC
BY: _____
SAM MARZOUK PRESIDENT
BY: _____
GREGORY L. HANSON C.F.O.

(Seal)
Borrower:
SSN:

200-2OH RED (Rev. 11/05)



EXHIBIT B

Return To:

Argent Mortgage Company, LLC
P.O. Box 5047
Rolling Meadows, IL 60008



CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY
MORT 12/30/2005 11:25:05 AM
**200512300492**

*AR 0603*

————————————————— [Space Above This Line For Recording Data] —————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated December 23, 2005                    ,
together with all Riders to this document.
**(B) "Borrower"** is WILFRED CANNON and CHARLESTINE CANNON

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

**OHIO**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3036  1/01

⑩ -6(OH) (0005)
Page 1 of 15                    Initials: *CC*
                                        *WC*
VMP MORTGAGE FORMS - (800)521-7291

12/23/2005 10:56:30

D06-01OH (05/2005)Rev.01

Lender's address is 3 Park Plaza - 10th Floor Irvine, CA 92614

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated December 23, 2005 .
The Note states that Borrower owes Lender one hundred thirty-five thousand and 00/100
Dollars
(U.S. $135,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 1, 2036 .

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ 1-4 Family Rider
☐ VA Rider    ☐ Biweekly Payment Rider    ☐ Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Initials: CC

-6(OH) (0005)     Page 2 of 15     12/23/2005 10:56:30     Form 3036 1/01

LrC

12-19038-aih   Doc 86   FILED 09/27/18   ENTERED 09/27/18 09:42:03   Page 16 of 37

**(P)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the
County of CUYAHOGA :
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

Parcel No.1:
Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:
And known as being Sublot No. 175 in the Beachwood No. 2 Subdivision of part of Original Euclid Township Tract No. 15 as shown by the recorded plat in Volume 33 of Maps, Page 3 of Cuyahoga County Records, as appears by said plat;
Parcel No.2:
Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:
And known as being part of Original Euclid Township Tract No. 15 and bounded and described as follows: Beginning at the most Southerly corner of Sublot No. 175 in Beachland No. 2 Subdivision as shown by the record plat in Volume 33 of Maps, Page 3 of Cuyahoga County Records; Thence Northwesterly along the Southwesterly line of said Sublot No. 175, 40 feet to the most Westerly corner of said Sublot No.175; Thence Southwesterly along the Southwesterly prolongation of the Northwesterly line of said Sublot No. 175, 162 feet to the Southwesterly line of a parcel of land conveyed to Elmer B. Wight by deed dated April 10, 1912 and recorded in Volume 1392, Page 112 Cuyahoga County Records; Thence Southeasterly along said Southwesterly line, 40 feet to a point that will intersect the Southwesterly prolongation of the Southeasterly line of said Sublot No. 175; Thence Northeasterly along said Southwesterly prolongation, 162 feet to the place of beginning, be the same more or less, but subject to all legal highways.
Parcel No.: 114-09-080.
Commonly known as: 18408 Windward Road, Cleveland, Ohio 44119.

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

Initials: _____

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

-6(OH) (0005)　　　　　　Page 4 of 15　12/23/2005 10:56:30　Form 3036　1/01

Initials:

CUYAHOGA COUNTY RECORDER
200512300492　PAGE 4 of 15

D06-04OH (05/2005)Rev.01

12-19038-aih　Doc 86　FILED 09/27/18　ENTERED 09/27/18 09:42:03　Page 18 of 37

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

D06-05OH (05/2005)Rev.01

CUYAHOGA COUNTY RECORDER
200512300492   PAGE 5 of 15

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

12-19038-aih   Doc 86   FILED 09/27/18   ENTERED 09/27/18 09:42:03   Page 20 of 37

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



-6(OH) (0005)

Initials: _CC_

Page 7 of 15   12/23/2005 10:56:30   Form 3036   1/01

_L C_

D06-07OH (05/2005)Rev.01

**CUYAHOGA COUNTY RECORDER**
**200512300492   PAGE 7 of 15**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

12-19038-aih　Doc 86　FILED 09/27/18　ENTERED 09/27/18 09:42:03　Page 22 of 37

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



Initials: _____

**CUYAHOGA COUNTY RECORDER**
**200512300492   PAGE 9 of 15**

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(OH) (0005)

Page 10 of 15    12/23/2005 10:56:30    Form 3036   1/01

Initials: _CC_

_W C_

CUYAHOGA COUNTY RECORDER

200612300492  PAGE 10 of 15

D06-10OH (05/2005)Rev.01

12-19038-aih    Doc 86    FILED 09/27/18    ENTERED 09/27/18 09:42:03    Page 24 of 37

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



Initials: _C C_


12-19038-aih   Doc 86   FILED 09/27/18   ENTERED 09/27/18 09:42:03   Page 25 of 37

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _CC_

D06-12OH (05/2005)Rev.01

**CUYAHOGA COUNTY RECORDER**
**200512300492   PAGE 12 of 15**

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, CUYAHOGA
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.



VMP®-6(OH) (0005)

Page 13 of 15   12/23/2005 10:56:30   Form 3036   1/01

Initials:

D06-13OH (05/2005)Rev.01

CUYAHOGA COUNTY RECORDER
200512300492   PAGE 13 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____     CHARLESTINE CANNON     -Borrower

_____     (Seal)

_____     WILFRED CANNON     -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                        -Borrower

**STATE OF OHIO,** *Cuyahoga* **County ss:**

On this _____ 2c _____ day of _December 2005_, before me, a
             **Day**                                 **Month/Year**

Notary Public in and for said County and State, personally appeared
_Charlestine Cannon, Wilfred Cannon_

the individual(s) who executed the foregoing instrument and acknowledged that he/she/they did examine and read the same and did sign the foregoing instrument, and that the same is his/her/their free act and deed.

    **IN WITNESS WHEREOF, I have hereunto set my hand and official seal.**

**My Commission Expires:**

JOSEPH A. MARKO, Notary Public
State of Ohio-County of Cuyahoga
My Commission Expires 1/1/2007

Notary Public

Prepared By:
Sara Lindhorn
2550 Golf Road, East Tower, 10th Floor, Rolling Meadows, IL 60008

Page 15 of 15

12/23/2005 10:56:30 AM

CUYAHOGA COUNTY RECORDER
200512300492   **PAGE 15 of 15**

400-15OH (05/2005)Rev.01



EXHIBIT C

Loan # 
MIN#

# LOAN MODIFICATION AGREEMENT
## (Providing for Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **1ST** day of **FEBRUARY, 2010** (the "Effective Date"), between **WILFRED CANNON**

(collectively "Borrower") and American Home Mortgage Servicing, Inc. as Servicer ("Loan Servicer"), modifies (1) the mortgage, deed of trust, or security deed (the "Security Instrument") dated **DECEMBER 23, 2005** and (2) the promissory note (the "Note"), bearing the same date as, and secured by, the Security Instrument (the Borrower's obligation under the Note, Security Instrument and this Agreement hereinafter referred to as the "Loan"), which covers the real and personal property located at **18408 WINDWARD ROAD, CLEVELAND, OHIO 44119** ,

(Property Address)

more fully described in the Security Instrument and defined therein as the "Property." All capitalized terms in this Agreement shall have the same meanings as set forth in the Note and Security Instrument, unless defined in this Agreement; all schedules and exhibits attached to this Agreement are incorporated into and made part of this Agreement; and all references to this Agreement include the schedules and exhibits.

In consideration of the mutual promises and agreements exchanged, Loan Servicer and Borrower hereto agree that the Note and Security Instrument shall be modified hereby as follows:

1. As of **FEBRUARY 1, 2010** , the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $ **133,957.56** , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A," attached hereto and made a part hereof.

2. Borrower promises to pay the New Principal Balance, plus interest, to the order of Loan Servicer. Interest will be charged on the New Principal Balance for the first year at the yearly rate of **2.000** % from **FEBRUARY 1, 2010** , and Borrower promises to pay monthly payments of principal and interest in the amount of $ **552.31** (plus any amounts due for taxes and insurance as set forth in Schedule "A"), beginning on the **1ST** day of **MARCH, 2010** . If the Loan is an adjustable-rate mortgage ("ARM") loan and Borrower receives an ARM adjustment notice prior to the payment beginning date indicated in the preceding sentence, Borrower should ignore such notice and make payments in accordance with this Agreement. During the second year, interest will be charged at the yearly rate of **3.000** % from **FEBRUARY 1, 2011** , and Borrower shall pay monthly payments of principal and interest in the amount of $ **617.73** (plus any amounts due for taxes and insurance), beginning on the **1ST** day of **MARCH, 2011** . During the third year, interest will be charged at the yearly rate of **4.000** %, from **FEBRUARY 1, 2012** , and Borrower shall pay monthly payments of principal and interest in the amount of $ **684.91** (plus any amounts due for taxes and insurance), beginning on the **1ST** day of **MARCH, 2012** . During the fourth year, interest will be charged at the yearly rate of **4.940** %, from **FEBRUARY 1, 2013** , and Borrower shall pay monthly payments of principal and interest in the amount of $ **749.20** (plus any amounts due for taxes and insurance), beginning on the **1ST** day of **MARCH, 2013** , and continuing thereafter until principal and interest are paid in full. If on **JANUARY 01, 2036** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

LOAN MODIFICATION AGREEMENT (Step Rate)--Single Family--AHMSI Instrument      Form 3 (02-19-09) *(page 1 of 4)*
First American Loan Production Services
First American Real Estate Solutions LLC
FALPS# NRSTEP.4 Rev. 03-12-09

3. Borrower will comply with all covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the Effective Date:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

4. Borrower understands, acknowledges and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Note and Security Instrument shall also apply to default in the making of the modified payments under this Agreement.

   (b) Except as herein modified, all covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect and none of Borrower's obligation or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Loan Servicer's or Note Holder's rights or remedies under the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Loan Servicer and Note Holder are presently entitled against the Property, Borrower, any other property or any other persons in any way obligated for, or liable on, the Note and Security Instrument, are expressly reserved by Loan Servicer and Note Holder.

   (c) Borrower has no right of set-off or counterclaim against Note Holder or Loan Servicer, or any defense to the obligations of the Note or Security Instrument.

   (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (e) All costs and expenses incurred by Loan Servicer in connection with this Agreement, including but not limited to property inspection fees and attorney's fees, shall be paid by the Borrower to Loan Servicer and, to the extent such fees are deferred or become part of the New Principal Balance, shall be secured by the Security Instrument. The type and amount of such fees, and the manner in which they are paid by Borrower, are set forth in Schedule "A."

   (f) If not prohibited by the law of the state(s) where the Property and Borrower are located, modification fee or, alternatively, a document preparation fee, over and above the costs and expenses set forth in (e) above, shall be paid by Borrower to Loan Servicer, and, to the extent such fee becomes part of the New Principal Balance, shall be secured by the Security Instrument. The type and amount of such fee, and the manner in which it is paid by Borrower, is set forth in Schedule "A".

   (g) The fees, costs and expenses as set forth in subparagraphs 4(e) and 4(f) above shall be deferred until the Loan is paid in full, added to the New Principal Balance, and/or paid by Borrower prior to the Effective Date, all as set forth in Schedule "A."

   (h) In addition to and simultaneously with Borrower's monthly payments of principal and interest as set forth in paragraph 2 above, Borrower shall be required pay to Loan Servicer, until such time as the New Principal Balance and interest are paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and

(ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Loan Servicer as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Loan Servicer specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to Borrower.

(i) Borrower shall make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

5. Borrower and Loan Servicer understand, acknowledge and agree that:

(a) Time is of the essence of this Agreement, in particular the receipt by Loan Servicer of this Agreement, fully executed by Borrower and the sums due under subparagraphs 4(e) and 4(f) above.

(b) Loan Servicer represents that it has the authority to enter into this Agreement on behalf of the Note Holder.

(c) The terms, clauses, conditions and provisions of this Agreement are binding upon and shall inure to the benefit of all assignees, successors-in-interest, personal representatives, estates, administrators, heirs, devisees, and legatees of each of the parties hereto.

(d) Except as is otherwise provided for herein, this Agreement (along with the Note and Security Instrument) constitutes the entire agreement between the parties with reference to the subject matter hereof, and supersedes any prior agreement, oral or written with respect thereto; and, in entering into this Agreement, no party is relying upon any representation, warranty, agreement, or covenants not set forth herein.

(e) This Agreement may be signed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

6. To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as so modified, legal and enforceable under applicable law, provided that should such modification or deletion materially diminish the benefit of this Agreement to any of Loan Servicer, Note Holder or Borrower, the Agreement shall be of no force or effect and the relationship of Loan Servicer, Note Holder and Borrower shall be entirely governed by the provisions of the Note and Security Instrument.

7. This Agreement shall be of no force or effect, and no action will be taken by Loan Servicer to cease collection activities relating to the Loan, unless and until Loan Servicer has received this Agreement, fully executed and initialed by the Borrower no later than **JANUARY 12, 2010** This Agreement is not considered "received" by Loan Servicer unless and until it has been delivered to Loan Servicer at **4875 Belfort Road, Suite #130, Jacksonville, FL 32256** and internally date stamped.

---

NOTICE TO BORROWERS WITH ADJUSTABLE RATE LOANS: For Borrowers with an adjustable-rate loan, please read this notice carefully. In accordance with subparagraphs 3(a) and 3(b) of this Agreement, Borrower understands that the Loan is modified from an adjustable-rate loan to a step-rate loan. An adjustable-rate loan differs from a step-rate loan. With a step-rate loan, the interest rate stays the same during specified intervals as provided under paragraph 2 of this Agreement. With an adjustable-rate mortgage, the interest rate changes periodically, in relation to an index and a margin, and payments may go up or down accordingly. **IF INTEREST RATES DECREASE AN ADJUSTABLE-RATE LOAN COULD BE LESS EXPENSIVE OVER A LONG PERIOD THAN A STEP-RATE LOAN. YOU UNDERSTAND THAT BY MODIFYING THIS LOAN TO A STEP-RATE LOAN, YOU ARE FOREGOING THIS POTENTIAL ADVANTAGE.**

---

LOAN MODIFICATION AGREEMENT (Step Rate)--Single Family--AHMSI Instrument      Form 3 (02-19-09) *(page 3 of 4)*
First American Loan Production Services
First American Real Estate Solutions LLC
FALPS# NRSTEP-3 Rev. 03-12-09



IN WITNESS WHEREOF, the undersigned have set their hands hereunto as of the date written below.

American Home Mortgage Servicing, Inc.

By: _____
    Name:
    Title:

_____
Borrower   **WILFRED CANNON**

_____
Borrower

_____
Borrower

_____
Borrower

LOAN MODIFICATION AGREEMENT (Step Rate)--Single Family--AHMSI Instrument          Form 3 (02-19-09) *(page 4 of 4)*
First American Loan Production Services
First American Real Estate Solutions LLC
FALPS# NRSTEP-4 Rev. 03-12-09

CRL L#████████████
Assignee L#████████████
Investor L#████████████
Custodian████████
Effective Date: 02/11/2009
When Recorded Return To:
AMERICAN HOME MTG SERVICING
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

CUYAHOGA COUNTY RECORDER
LILLIAN J GREENE - 1
RELA 2/17/2009 12:16:36 PM
**200902170631**

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC**, WHOSE ADDRESS IS 10801 E. 6TH STREET , RANCHO CUCAMONGA, CA 91730, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, ARGENT SECURITIES INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-W3, UNDER THE POOLING AND SERVICING AGREEMENT DATED MARCH 1, 2006**, WHOSE ADDRESS IS 1761 EAST ST. ANDREW PLACE , SANTA ANA, CA 92705-4934, (ASSIGNEE)
Said mortgage executed by: **WILFRED CANNON AND CHARLESTINE CANNON** (current owner)  and recorded in the record of mortgages Volume  page  and/or Instrument # 200512300492 in the office of the Recorder of CUYAHOGA, Ohio.

More particularly described as follows (if needed), to wit:

IN WITNESS WHEREOF, the undersigned has hereunto set its corporate hand by its proper officer THIS 20TH DAY OF JANUARY IN THE YEAR 2009
**CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC**
POA RECORDED: 11/20/2007 DOC#:2007-11200374

By:_____
    CRYSTAL MOORE VICE PRESIDENT

STATE OF FLORIDA        COUNTY OF PINELLAS
Before me, the undersigned, a Notary Public in and for said County, personally appeared CRYSTAL MOORE of CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC who as such officer for and on its behalf acknowledged the execution of the foregoing instrument. Witness my hand and Notary Seal THIS 20TH DAY OF JANUARY IN THE YEAR 2009

BRYAN J. BLY        Notary Public
My commission expires: 07/01/2011

Prepared by: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152



Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

f541945FRMOHX1

Exhibit 1

| Name: | Wilfred Cannon | | | | | | |
|---|---|---|---|---|---|---|---|
| BK Case Number: | 12-19038-aih | | | | | | |
| Filing Date: | 12/13/2012 | | | | | | |
| Post First Due: | 1/1/2013 | | | Completed By: | Parvatim | | |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance | Comments |
|---|---|---|---|---|---|---|
| 1/1/2013 | 3/21/2013 | $ 1,638.76 | $ 819.38 | $ 819.38 | $ 819.38 | |
| 2/1/2013 | 3/21/2013 | | $ 819.38 | $ (819.38) | $ - | |
| | 4/16/2013 | $ 819.38 | | $ 819.38 | $ 819.38 | |
| 3/1/2013 | 6/18/2013 | $ 1,638.76 | $ 883.67 | $ 755.09 | $ 1,574.47 | |
| 4/1/2013 | 6/18/2013 | | $ 883.67 | $ (883.67) | $ 690.80 | |
| 5/1/2013 | 7/15/2013 | $ 819.38 | $ 883.67 | $ (64.29) | $ 626.51 | |
| 6/1/2013 | 8/2/2013 | $ 440.00 | $ 883.67 | $ (443.67) | $ 182.84 | |
| | 8/13/2013 | $ 5.00 | | $ 5.00 | $ 187.84 | |
| 7/1/2013 | 8/19/2013 | $ 819.38 | $ 883.67 | $ (64.29) | $ 123.55 | |
| | 9/10/2013 | $ 440.55 | | $ 440.55 | $ 564.10 | |
| 8/1/2013 | 10/2/2013 | $ 440.55 | $ 883.67 | $ (443.12) | $ 120.98 | |
| | 11/4/2013 | $ 440.55 | | $ 440.55 | $ 561.53 | |
| 9/1/2013 | 12/4/2013 | $ 440.55 | $ 883.67 | $ (443.12) | $ 118.41 | |
| | 1/3/2014 | $ 440.55 | | $ 440.55 | $ 558.96 | |
| 10/1/2013 | 2/4/2014 | $ 440.55 | $ 883.67 | $ (443.12) | $ 115.84 | |
| | 3/5/2014 | $ 440.55 | | $ 440.55 | $ 556.39 | |
| 11/1/2013 | 4/4/2014 | $ 440.55 | $ 883.67 | $ (443.12) | $ 113.27 | |
| | 5/5/2014 | $ 440.55 | | $ 440.55 | $ 553.82 | |
| 12/1/2013 | 6/3/2014 | $ 440.44 | $ 883.67 | $ (443.23) | $ 110.59 | |
| | 7/3/2014 | $ 440.55 | | $ 440.55 | $ 551.14 | |
| 1/1/2014 | 8/5/2014 | $ 440.55 | $ 883.67 | $ (443.12) | $ 108.02 | |
| | 9/4/2014 | $ 440.55 | | $ 440.55 | $ 548.57 | |
| 2/1/2014 | 10/3/2014 | $ 440.55 | $ 883.67 | $ (443.12) | $ 105.45 | |
| | 11/4/2014 | $ 440.55 | | $ 440.55 | $ 546.00 | |
| 3/1/2014 | 12/4/2014 | $ 440.55 | $ 883.67 | $ (443.12) | $ 102.88 | |
| | 1/6/2015 | $ 440.55 | | $ 440.55 | $ 543.43 | |
| 4/1/2014 | 2/3/2015 | $ 440.55 | $ 883.67 | $ (443.12) | $ 100.31 | |
| | 3/3/2015 | $ 440.55 | | $ 440.55 | $ 540.86 | |
| 5/1/2014 | 4/3/2015 | $ 440.55 | $ 883.67 | $ (443.12) | $ 97.74 | |
| | 5/6/2015 | $ 440.55 | | $ 440.55 | $ 538.29 | |
| 6/1/2014 | 6/2/2015 | $ 440.55 | $ 883.67 | $ (443.12) | $ 95.17 | |
| | 7/2/2015 | $ 440.55 | | $ 440.55 | $ 535.72 | |
| 7/1/2014 | 8/4/2015 | $ 440.55 | $ 883.67 | $ (443.12) | $ 92.60 | |
| | 9/3/2015 | $ 440.55 | | $ 440.55 | $ 533.15 | |
| 8/1/2014 | 10/5/2015 | $ 440.55 | $ 883.67 | $ (443.12) | $ 90.03 | |
| | 11/3/2015 | $ 440.55 | | $ 440.55 | $ 530.58 | |
| 9/1/2014 | 12/4/2015 | $ 440.55 | $ 883.67 | $ (443.12) | $ 87.46 | |
| | 1/5/2016 | $ 440.55 | | $ 440.55 | $ 528.01 | |
| 10/1/2014 | 2/2/2016 | $ 440.55 | $ 883.67 | $ (443.12) | $ 84.89 | |

| Due Date | Date | Amount | Payment | Amount | Balance | Note |
|---|---|---|---|---|---|---|
| | 3/2/2016 | $ 440.55 | | $ 440.55 | $ 525.44 | |
| 11/1/2014 | 4/4/2016 | $ 440.55 | $ 883.67 | $ (443.12) | $ 82.32 | |
| | 5/6/2016 | $ 440.55 | | $ 440.55 | $ 522.87 | |
| 12/1/2014 | 6/4/2016 | $ 440.55 | $ 883.67 | $ (443.12) | $ 79.75 | |
| | 7/4/2016 | $ 440.55 | | $ 440.55 | $ 520.30 | |
| 1/1/2015 | 8/5/2016 | $ 440.55 | $ 883.67 | $ (443.12) | $ 77.18 | |
| | 9/6/2016 | $ 440.55 | | $ 440.55 | $ 517.73 | |
| 2/1/2015 | 10/7/2016 | $ 440.60 | $ 883.67 | $ (443.07) | $ 74.66 | |
| | 11/4/2016 | $ 440.55 | | $ 440.55 | $ 515.21 | |
| 3/1/2015 | 12/4/2016 | $ 440.55 | $ 883.67 | $ (443.12) | $ 72.09 | |
| | 1/5/2017 | $ 440.55 | | $ 440.55 | $ 512.64 | |
| 4/1/2015 | 2/6/2017 | $ 440.55 | $ 883.67 | $ (443.12) | $ 69.52 | |
| | 3/5/2017 | $ 440.55 | | $ 440.55 | $ 510.07 | |
| 5/1/2015 | 4/7/2017 | $ 440.55 | $ 883.67 | $ (443.12) | $ 66.95 | |
| 6/1/2015 | 4/11/2017 | $ 2,402.84 | $ 883.67 | $ 1,519.17 | $ 1,586.12 | Credit Provided for Missed NOPC |
| 7/1/2015 | 4/11/2017 | | $ 883.67 | $ (883.67) | $ 702.45 | |
| 8/1/2015 | 5/7/2017 | $ 440.55 | $ 883.67 | $ (443.12) | $ 259.33 | |
| | 6/5/2017 | $ 440.55 | | $ 440.55 | $ 699.88 | |
| 9/1/2015 | 7/6/2017 | $ 440.55 | $ 883.67 | $ (443.12) | $ 256.76 | |
| | 7/28/2017 | $ 425.92 | | $ 425.92 | $ 682.68 | Credit Provided for Missed NOPC |
| 10/1/2015 | 8/4/2017 | $ 440.55 | $ 883.67 | $ (443.12) | $ 239.56 | |
| | 9/7/2017 | $ 440.55 | | $ 440.55 | $ 680.11 | |
| 11/1/2015 | 10/4/2017 | $ 440.55 | $ 883.67 | $ (443.12) | $ 236.99 | |
| | 11/7/2017 | $ 440.55 | | $ 440.55 | $ 677.54 | |
| 12/1/2015 | 12/10/2017 | $ 440.55 | $ 883.67 | $ (443.12) | $ 234.42 | |
| | 1/5/2018 | $ 440.55 | | $ 440.55 | $ 674.97 | |
| 1/1/2016 | 2/5/2018 | $ 440.55 | $ 883.67 | $ (443.12) | $ 231.85 | |
| | 3/7/2018 | $ 440.55 | | $ 440.55 | $ 672.40 | |
| 2/1/2016 | 4/5/2018 | $ 440.55 | $ 883.67 | $ (443.12) | $ 229.28 | |
| | 5/4/2018 | $ 440.55 | | $ 440.55 | $ 669.83 | |
| 3/1/2016 | 6/5/2018 | $ 440.55 | $ 883.67 | $ (443.12) | $ 226.71 | |
| | 7/4/2018 | $ 440.55 | | $ 440.55 | $ 667.26 | |
| 4/1/2016 | 8/3/2018 | $ 440.55 | $ 883.67 | $ (443.12) | $ 224.14 | |
| | 9/8/2018 | $ 440.55 | | $ 440.55 | $ 664.69 | |

| | |
|---|---|
| Name: | Wilfred Cannon |
| BK Case Number: | 12-19038-aih |
| Filing Date: | 12/13/2012 |
| Completed by: | Parvatim |

| Due Date | Total Payment | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
|---|---|---|---|---|---|---|
| 5/1/2016 | $ 883.67 | $ 282.99 | $ 466.21 | $ 134.47 | $ - | |
| 6/1/2016 | $ 883.67 | $ 284.16 | $ 465.04 | $ 134.47 | $ - | |
| 7/1/2016 | $ 883.67 | $ 285.33 | $ 463.87 | $ 134.47 | $ - | |
| 8/1/2016 | $ 883.67 | $ 286.50 | $ 462.70 | $ 134.47 | $ - | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 9/1/2016 | $ 883.67 | $ 287.68 | $ 461.52 | $ 134.47 | $ - | |
| 10/1/2016 | $ 883.67 | $ 288.86 | $ 460.34 | $ 134.47 | $ - | |
| 11/1/2016 | $ 875.88 | $ 290.05 | $ 459.15 | $ 126.68 | $ - | 9/22/2016 |
| 12/1/2016 | $ 875.88 | $ 291.25 | $ 457.95 | $ 126.68 | $ - | |
| 1/1/2017 | $ 875.88 | $ 292.45 | $ 456.75 | $ 126.68 | $ - | |
| 2/1/2017 | $ 875.88 | $ 293.65 | $ 455.55 | $ 126.68 | $ - | |
| 3/1/2017 | $ 875.88 | $ 294.86 | $ 454.34 | $ 126.68 | $ - | |
| 4/1/2017 | $ 875.88 | $ 296.07 | $ 453.13 | $ 126.68 | $ - | |
| 5/1/2017 | $ 875.88 | $ 297.29 | $ 451.91 | $ 126.68 | $ - | |
| 6/1/2017 | $ 875.88 | $ 298.52 | $ 450.68 | $ 126.68 | $ - | |
| 7/1/2017 | $ 875.90 | $ 299.74 | $ 449.46 | $ 126.70 | $ - | 6/7/2017 |
| 8/1/2017 | $ 875.90 | $ 300.98 | $ 448.22 | $ 126.70 | $ - | |
| 9/1/2017 | $ 875.90 | $ 302.22 | $ 446.98 | $ 126.70 | $ - | |
| 10/1/2017 | $ 875.90 | $ 303.46 | $ 445.74 | $ 126.70 | $ - | |
| 11/1/2017 | $ 875.90 | $ 304.71 | $ 444.49 | $ 126.70 | $ - | |
| 12/1/2017 | $ 875.90 | $ 305.97 | $ 443.23 | $ 126.70 | $ - | |
| 1/1/2018 | $ 875.90 | $ 307.22 | $ 441.98 | $ 126.70 | $ - | |
| 2/1/2018 | $ 875.90 | $ 308.49 | $ 440.71 | $ 126.70 | $ - | |
| 3/1/2018 | $ 875.90 | $ 309.76 | $ 439.44 | $ 126.70 | $ - | |
| 4/1/2018 | $ 875.90 | $ 311.03 | $ 438.17 | $ 126.70 | $ - | |
| 5/1/2018 | $ 875.90 | $ 312.31 | $ 436.89 | $ 126.70 | $ - | |
| 6/1/2018 | $ 875.90 | $ 313.60 | $ 435.60 | $ 126.70 | $ - | |
| 7/1/2018 | $ 876.16 | $ 314.89 | $ 434.31 | $ 126.96 | $ - | 5/25/2018 |
| 8/1/2018 | $ 876.16 | $ 316.19 | $ 433.01 | $ 126.96 | $ - | |
| 9/1/2018 | $ 876.16 | $ 317.49 | $ 431.71 | $ 126.96 | $ - | |
| **Total Due** | **$ 25,448.34** | **$ 8,697.72** | **$ 13,029.08** | **$ 3,721.54** | **$ -** | |